IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**LAQUAN DESHEA STONE,**

        **Plaintiff,**

v.                                                                  Civil Action No. 3:22cv663

**TONYA CHAPMAN,** *et al.*,

        **Defendants.**

## MEMORANDUM OPINION

LaQuan Deshea Stone, a Virginia inmate, has submitted this 42 U.S.C. § 1983[1] complaint. (ECF No. 12.) Stone contends that Tonya Chapman and other past and present members of the Virginia Parole Board ("VPB") violated his rights by refusing to release him on discretionary parole.[2] The matter is before the Court for evaluation pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. Stone's claims and the action will be dismissed as frivolous and for failure to state a claim for relief.

## I. Preliminary Review

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] Stone also names Harold W. Clarke, the Director of the Virginia Department of Corrections as a defendant.

a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570,

2

rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. Stone's Allegations and Claims

Stone was convicted of first-degree murder and use of a firearm in the commission of that offense in 1998. (ECF No. 1, at 1.)[3] Stone was sentenced to thirty-three years of imprisonment. (ECF No. 1, at 1.) Stone is eligible for discretionary parole. (ECF No. 12, at 2.) "Defendants denied Stone parole for two consecutive years, stating, "release at this time would diminish seriousness of crime, serious nature and circumstances of your offense, crimes committed, and you should serve more of your sentence prior to release on parole." (ECF No. 12, at 2.)

---

[3] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling from Stone's submissions.

Stone contends that, in denying him parole, Defendants violated his rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment.[4]  Specifically, Stone asserts:

| | |
|---|---|
| Claim One | Stone was denied due process because section 53.1–136 of the Virginia Code "requires Parole Board to create rules that shall determine those who are suitable for release." (ECF No. 12, at 4.) These rules are supposed to "be posted and used as stated. The rules are not posted for viewing." (ECF No. 12, at 4.) |
| Claim Two | Stone was not provided with a specific reason for the denial of his parole. (ECF No. 12, at 4.) |
| Claim Three | Stone was denied due process because although he met the criteria for release on parole, he was not released on parole. (ECF No. 12, at 3–5.)[5] |
| Claim Four | "Plaintiff has been denied equal protection by being treated differently than similarly situated offenders. Similar offenders under parole system who received, on average 35.2 years for first-degree murder served on average 10.3 years. Plaintiff has served more than 24 years on a 33-year sentence." (ECF No. 12, at 4–5.) |

As explained below, claims such as these raised by Stone have been repeatedly rejected by this Court and the United States Court of Appeals for the Fourth Circuit.

### III. Due Process Claims

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected liberty or property interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted). Where government action impacts a

---

[4] "No State shall . . . deprive any person of life, liberty, or property, without due process of law nor deny to any person within its jurisdiction equal protection of the laws." U.S. Const. amend. XIV, § 1.

[5] The seeds of this claim appear in what Stone denominates as his third and fifth ground for relief.

protected liberty interest, the second step is to determine "what process is due" under the circumstances. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (observing that "due process is flexible . . . . not all situations calling for procedural safeguards call for the same kind of procedure").

### A. Claim Three

A liberty interest may arise from the Constitution itself, or from state laws and policies. *Wilkinson v. Austin*, 545 U.S. 209, 220–21 (2005). "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). "With no constitutional right to parole *per se*, federal courts recognize due process rights in an inmate only where the state has created a 'legitimate claim of entitlement' to some aspect of parole." *Vann v. Angelone*, 73 F.3d 519, 522 (4th Cir. 1996) (quoting *Gaston v. Taylor*, 946 F.2d 340, 344 (4th Cir. 1991)).

"Contrary to [Stone's] view . . . , 'the pertinent [Virginia] statutes, far from creating a presumption that release will be granted [if he meets certain criteria], absolutely prohibits parole unless the Parole Board decides otherwise.'" *Burnette v. Fahey*, No. 3:10CV70, 2010 WL 4279403, at *8 (E.D. Va. Oct. 25, 2010) (second alteration in original) (quoting *James v. Robinson*, 863 F. Supp. 275, 277 (E.D. Va.), *aff'd*, No. 94–7136, 1994 WL 709646 (4th Cir. Dec. 22, 1994)). The United States Court of Appeals for the Fourth Circuit consistently has found the pertinent Virginia statutes governing release on discretionary parole fail to create a protected liberty interest in *release* on parole. *See Burnette v. Fahey*, 687 F.3d 171, 181 (4th Cir. 2012) (citing *Gaston v. Taylor*, 946 F.2d 340, 344 (4th Cir. 1991); *Vann v. Angelone*, 73 F.3d 519, 522 (4th Cir. 1996)).

Accordingly, Claim Three lacks legal merit and will be DISMISSED.

5

### B. Claim Two

Virginia, however, has created a limited liberty interest in consideration for parole. *Burnette*, 687 F.3d at 181; *Burnette*, 2010 WL 4279403, at *8. "The question thus becomes what procedures are required under the Due Process Clause in [considering] an inmate for discretionary release on parole." *Burnette*, 2010 WL 4279403, at *8 (alteration in original) (quoting *Neal*, 2008 WL 728892, at *2). The Fourth Circuit has stated that the Constitution requires only a very limited amount of process in considering an inmate for parole. Specifically, "[a]t most, . . . parole authorities must furnish to the prisoner a statement of its reasons for denial of parole." *Burnette*, 687 F.3d at 181 (alteration and omission in original) (citation omitted) (internal quotation marks omitted). "So long as the statement provides a valid ground for denying parole, the federal courts cannot, under the guise of due process, demand more from the state." *Burnette*, 2010 WL 4279403, at *8 (citation omitted).

Here, according to Stone, the VPB provided him with a statement of its reasons for denying him parole. Specifically, Stone represents that the VPB declined to release him on parole because: "release at this time would diminish seriousness of crime, serious nature and circumstances of your offense, crimes committed, and you should serve more of your sentence prior to release on parole." (ECF No. 12, at 2.) The Fourth Circuit has "concluded that that the parole board gave constitutionally sufficient reasons when it informed the prisoner that he was denied parole release because of 'the seriousness of [his] crime' and his 'pattern of criminal conduct.'" *Burnette*, 2010 WL 4279403, at *8 (alteration in original) (quoting *Bloodgood v. Garraghty*, 783 F.2d 470, 472, 474–75 (4th Cir. 1986)). Here, the VPB provided Stone with at least three valid grounds for its decision. *See Bloodgood*, 783 F.2d at 475 (explaining that the "denial rested on two valid reasons, and we see no reason to disturb the administrative

6

judgments"). The reasons provided by the VPB for denying Stone parole did not deprive him of due process. Accordingly Claim Two will be DISMISSED.

### C. Claim One

In Claim One, Stone asserts that he was denied due process because section 53.1–136 of the Virginia Code "requires Parole Board to create rules that shall determine those who are suitable for release." (ECF No. 12, at 4.) These rules are supposed to "be posted and used as stated. The rules are not posted for viewing." (ECF No. 12, at 4.) The pertinent portion of the statute provides that the VPB shall: "[a]dopt, subject to approval by the Governor, general rules governing the granting of parole and eligibility requirements, which shall be published and posted for public review." Va. Code Ann. § 53.1-136.1 (West 2023). "Those rules were previously published in the Virginia Administrative Code. 14 Va. Reg. No. 17 at 2457 (Apr. 22, 1998)." *Burnette*, 2010 WL 4279403, at *5.

> [I]n 1998, the [VPB] repealed prior rules governing parole that it had published in the Virginia Administrative Code. In place of these rules, it distributed a 'Policy Manual.' This Manual outlines fourteen factors that, according to the [VPB], guide its discretion in parole decisions. The nature of the offense of incarceration is one such factor, along with considerations of rehabilitation and the risk posed by the prisoner to himself and to society upon his release.

*Burnette*, 687 F.3d at 176. Thus, as factual matter, Stone cannot demonstrate that the VPB deviated from the requirement to publish the factors in considers in evaluating an offender for parole. Moreover, to the extent Stone suggests that the VPB has deviated from some state procedural requirement, such an omission fails to give rise to a federal due process claim.[6]

> Process only assumes significance in a context. The notion that naked process itself takes on constitutional dimensions has most troublesome implications. Courts have explicitly and repeatedly rejected the proposition that an individual has an interest

---

[6] Stone asserts that he "has a 'liberty interest enforceable under the due process clause of the Fourteenth Amendment' in the correct application of mandated procedure governing discretionary parole." (ECF No. 12, at 3–4.) Stone, however, fails to clearly articulate how the VPB deviated from that procedure.

7

in a state-created procedural device, such as a hearing, that is entitled to constitutional due process protection. . . . Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement. . . . The mere fact that the government has established certain procedures does not mean that the procedures thereby become substantive liberty interests entitled to federal constitutional protection under the Due Process Clause. . . . Such state procedural requirements must be enforced in state courts under state law.

*Burnette*, 2010 WL 4279403, at *9–10 (quoting *Hill v. Jackson*, 64 F.3d 163, 171 (4th Cir. 1995)). Accordingly, Claim One will be DISMISSED.

### III.  Equal Protection Claims

Stone contends that he was denied equal protection because other inmates who were convicted of murder were granted parole earlier. "The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). In order to state an equal protection claim, Stone must allege that: (1) he and a comparator inmate were treated differently and were similarly situated; and (2) the different treatment was the result of discrimination. *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation omitted).

"[I]n light of the myriad of factors involved in a parole decision, '[i]t is difficult to believe that any two prisoners could ever be considered 'similarly situated' for the purpose of judicial review of an equal protection claim.'" *Reffitt v. Nixon*, 917 F. Supp. 409, 414 (E.D. Va. 1996) (second alteration in original) (quoting *Rowe v. Cuyler*, 534 F. Supp. 297, 301 (E.D.N.Y. 1982)). Stone has failed to allege sufficient facts to indicate he was treated differently than any other inmate who was similarly situated.

Accordingly, Claim Four will be DISMISSED.

8

## IV. Conclusion

Stone's claims will be DISMISSED. The action will be DISMISSED. Stone's outstanding motions (ECF Nos. 17–19, 21, 23, 27, 28) will be DENIED. The Clerk will be DIRECTED to note the disposition of the action for purposes of 28 U.S.C. § 1915(g).

Date: 5-24-2023
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge